Fairview Fluor-Spar & Lead Co. v. Am. S. & T. Co., 206 Ill. App. 443.

the purchasing, and this instruction should not have ignored such fact. Many other criticisms are made upon the instructions which we do not deem it necessary to consider at the present time as sufficient has already appeared to cause a reversal of this case.

For the reasons above given we are of the opinion that the court erred in the giving of its instructions and in rendering judgment against the appellant, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

---

Fairview Fluor-Spar & Lead Company, Appellee, v. American Security & Trust Company, Executor, Appellant.

1. BOUNDARIES, § 37*—*when striking of pleas is proper.* In a statutory proceeding to establish a boundary line and corners, where the defendant complained of striking of his pleas from the files, *held* that the proceeding was purely statutory, and that as the statute did not contemplate the filing of pleas, the striking of the pleas in question was not error.

2. BOUNDARIES, § 37*—*when filing of amended petition is discretionary.* In a statutory proceeding to establish a boundary line and corners, where the defendant complained of the giving of leave to file an amended petition, *held* that as the original petition, in substance, contained all the statutory requirements and was therefore sufficient to confer jurisdiction, the filing of an amended petition was discretionary.

3. BOUNDARIES, § 37*—*what is effect of failing to abide by demurrer.* By failing to abide by a demurrer to a petition in a proceeding to establish boundaries, a party is precluded from raising objections to the giving of leave to file an amended petition.

4. BOUNDARIES, § 40*—*when allowance of amendment to commissioners' report is not an abuse of discretion.* In a statutory

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

. proceeding to establish a boundary line and corners, where the court permitted an amendment to be made to the commissioners' report stating that although the corner in question had never been marked by stake or monument by the original surveys, it was established by the government surveyors in accordance with the rule established for locating closing corners, which was to locate them midway between the section corners, *held* that, as the amendment was simply a clearer statement of what the commissioners intended to say in the original report, the allowance of the amendment was no abuse of discretion.

5. BOUNDARIES, § 40*—*when legality of report of commissioners is not affected by absence of commissioner.* In a statutory proceeding to establish a boundary line and corners, where the defendant complained of the absence on one day of one of the members of the commission, *held* that as such member assisted in locating the corner in question and approved what the others did in his absence, the legality of the report was not affected by such absence.

6. OFFICERS—*what construction given words purporting to give joint authority to three or more persons.* Words in a statute purporting to give a joint authority to three or more public officers or other persons are to be construed as giving such authority to a majority of such officers or persons.

7. BOUNDARIES, § 38*—*when evidence is sufficient to show establishment of corner.* In a statutory proceeding to establish a boundary line and corners, where the defendant contended that the evidence failed to disclose that the corner in question was ever an established corner under the statute, *held* that government plats showing that the corners were established and marked by the government surveyors, and showing the corners in question, were sufficient to make the corner in dispute an established corner as contemplated by the statute.

8. JUDGMENT, § 232*—*what is not entry of judgment rendered at previous term.* In a statutory proceeding to locate a boundary line and corners, where the presiding judge entered the judgment according to the directions of the judge before whom the case was tried, *held* that this was not the entering of a judgment rendered at a previous term, but the rendering and entering of a judgment which had been taken under advisement by the other judge.

9. BOUNDARIES, § 45*—*when objection as to disqualification of commissioner is too late.* In a statutory proceeding to locate a boundary and corners, where the defendant complained that one of the members was not disinterested, and where it appeared that such member had at one time assisted in surveying the corner in dispute

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

for the defendant, *held* that the defendant was precluded from making the objection, as he failed to object at the time of the appointment of such member.

Appeal from the Circuit Court of Hardin county; the Hon. CHARLES H. MILLER, Judge, presiding. Heard in this court at the March term, 1917. Affirmed. Opinion filed June 18, 1917.

CHARLES DURFEE and J. E. DENTON, for appellant.

ELIOT, CHAPLIN, BLAYNEY & BEDAL, JAMES A. WATSON and J. Q. A. LEDBETTER, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On February 22, 1912, appellee, Fairview Fluor-Spar & Lead Company, a corporation, filed its petition in the Circuit Court of Hardin county, alleging its ownership of certain lands in that county and describing the eastern boundary and corners thereof, and further alleging that such boundary was in dispute and said corners lost; that John R. McLean was the owner of the lands adjoining such boundary and corners on the east and refused to enter into an agreement to establish said line and corners as provided by law, and asking that a commission of surveyors be appointed to make a survey of and permanently establish such boundary line and corners. After the filing of the petition the death of the defendant John R. McLean was suggested and American Security & Trust Company, his executor, was named as defendant and is appellant here. Appellant filed a general and special demurrer to this petition, alleging specially that the boundary line and corners of the lands of respondent to be affected were not described with sufficient legal certainty. This demurrer was overruled. Appellant then filed six pleas and afterwards four additional pleas, denying the allegations in the petition

and setting up some new matter. On September 2, 1912, all these pleas upon motion of appellee were stricken from the files upon the ground that no rule of law or practice authorized the filing of pleas in such cases. September 4, 1912, appellee filed an amended petition alleging itself to be the owner of "the southwest quarter of Section thirty-two (32), Township twelve (12) south, Range eight (8) east, in said county of Hardin"; "that the southeast corner thereof is in dispute and the said corner as established and located by the United States Government has been lost and destroyed and is now in dispute"; that appellant was the owner of the land adjoining said corner or adjacent thereto, and refused to enter into an agreement for the appointment of a commission of surveyors to re-establish such corner. Appellant filed a motion to dismiss this amended petition on the grounds it was not an amended petition and that sufficient notice had not been given. An amendment to the amended petition was filed setting forth the giving of notice to appellant of the application for a commission.

Appellant filed two pleas denying the averments of the petition as finally amended. These pleas were also stricken from the files on motion of appellee. At the September term, 1912, the court, over the objections of appellant, appointed W. M. Ball, H. M. Winders and G. H. Brown as a commission of surveyors to establish the corner in question. This commission submitted its report at the March term, 1913. Appellant filed a motion to dismiss the petition for the want of jurisdiction as it was shown by the report that the corner in dispute had never been established by the government. On motion of appellee, leave was granted to amend the report, which was done, and the motion to dismiss overruled. The case was continued from term to term until February 2, 1914, when ap-

pellant filed twelve objections to the report and later, on February 8th, also moved to vacate the order appointing the commission on the ground he had been denied the right to controvert the allegations in the amended petition, which motion was overruled. It was agreed that a jury be waived and cause heard by the court. At the November term, 1915, the cause came up for hearing before Judge Charles H. Miller, who heard the evidence and took the case under advisement. At the March term, 1916, Judge Julius C. Kern, the then presiding judge, entered final judgment approving the report of the commission, the judgment reciting: "By direction of said Hon. C. H. Miller, the findings and judgment of said Judge C. H. Miller are, on this the 28th day of March, A. D. 1916, being one of the regular court days of the above-styled term of this court, entered herein by the Presiding Judge of this court at this term, viz.: Hon. J. C. Kern, as follows, to wit:" etc.

At the close of the testimony the court on motion of appellee held as a matter of law "that the southeast corner of the southwest quarter of Section thirty-two (32), Township twelve (12), Range eight (8) east, is an established government corner, and one which, if lost or in dispute, the petitioner is entitled to have permanently re-established and located," and "that the petitioner and respondent, being the owner of all the land adjacent to or adjoining the corner in dispute, are the only necessary parties to this suit." The argument for appellant is devoted to discussing the sufficiency of the petition; the action of the trial court in overruling his demurrers and striking his pleas and permitting appellee to file the amended petition; the sufficiency of the commission's report and the amending of the same; the manner in which the commission proceeded to make the survey; the fact that one member of the commission was absent one

day; the question whether one member of the commission was disinterested; the claim that the evidence does not disclose that the corner in question was established by the government and the rendering and entering of the judgment by Judge Kern.

The original petition may not have been accurately drawn, but it, in substance, contained all the statutory requirements and was therefore sufficient to confer jurisdiction. The filing of the amended petition was then a matter within the discretion of the court, and that discretion does not seem to have been abused. In any event, appellant having failed to abide the demurrer to the original petition, and, having filed objections to the commission's report, is now in no position to raise this question. This is purely a statutory proceeding, and the statute governing it does not appear to contemplate the filing of any pleas. Section 13, ch. 133, Hurd's Rev. St. 1916 (J. & A. ¶ 11145) provides: "Upon the filing of proper petition and proof of due notice as aforesaid, the said court shall appoint a commission of three surveyors," and section 14 (J. & A. ¶ 11146) of the same chapter reads: "Upon the filing of said report, any person whose interest may be affected by said survey shall be at liberty to enter his objections to said report, and the court shall hear and determine said objections." The courts of this State have held that in a proceeding of eminent domain it is not proper to file pleas, and if pleas are filed it is proper to strike same from the files on motion. *Smith v. Chicago & W. I. R. Co.*, 105 Ill. 511. The record shows that at the September term, 1914, leave was given appellant to file pleas, which he failed to do. All points raised by the pleas were raised by the objections to the commission's report or covered by the stipulation filed, and while it appears to us the court might properly have permitted the pleas to remain on file, yet appellant was not in any way harmed

by the striking of them from the files and no error was committed by the court in so doing.

The commission's report as filed contained the following: "This corner having never been established or marked by a stake, by the original surveys, either of the township or range lines, nor the subdivision of the township, it should be established in accordance with the rule established for locating closing corners, which is to locate them midway between the section corners." The court allowed that part of the report to be amended to read: "Although this corner had never been marked by stake or monument by the original surveys, either of the township or range line, nor the subdivisions of the township, it was established by the government surveyors in accordance with the rule established for locating closing corners, which is to locate them midway between the section corners." To the making of this amendment appellant earnestly objected. It is evident, however, from a reading of the report and a consideration of the testimony that the amendment is simply a clearer statement of what the commission intended to say by the language of the original report. This amendment was no abuse of the court's discretion under the liberal construction given the statute on amendments and jeofails by our courts and, as amended, was sufficient to support the judgment.

From the record it appears the commission proceeded to establish the corner in question in accordance with the manner prescribed by the statute. The location of the southwest corner of Section 32, as established by the government survey, was known and not disputed. From this corner the commission proceeded to locate the southeast corner of the Section as shown by notes on the government plat. The location of the corner in dispute was then simply a matter of locating the point midway between these two

section corners. This the commission did, and then verified the same by reference to other points, plats and surveys. Even though some of their acts with reference to the other points, plats and surveys were not strictly such as contemplated by the statute, yet such acts tended to confirm the location of the corner as fixed by them, with reference to the two section corners.

The fact that one member of the commission, Mr. Brown, did not take any part in one day's work, in no way affects the legality of the report. He did assist in locating the southeast corner of Section 32, the one point necessary to be established in order to fix the location of the corner in question, and approved of what the other members did the day he was absent. The report was signed by all three members of the commission, but had it been signed by only two members thereof it would have been sufficient. Paragraph 9, sec. 1, ch. 131, Hurd's Rev. St. 1916 (J. & A. ¶ 11102), provides: "Words purporting to give a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or persons."

Counsel for appellant contend the evidence does not disclose that the southeast corner of the southwest quarter of Section 32 was ever an established corner under the language of the statute. It is true the evidence does not disclose that the government surveyors in making the original survey physically located this particular corner by driving a stake or otherwise. The government plats introduced in evidence do show, however, that the southeast and southwest corners of this Section were established and marked by the government surveyors, and such plats show the corner in question. This is sufficient to make the corner in dispute an "established" corner as contemplated by the Illinois statute. Section 2396, Revised Statutes of the United States, provides: "All the corners marked in

the surveys returned by the surveyor-general shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate; and the corners of half and quarter sections not marked on the surveys shall be placed as nearly as possible equidistant from two corners which stand on the same line." The quarter section corners of Section 32, after the exterior corners of that section had been established, were as well established corners and as much used in the conveyance of the land, even though not actually marked, as such exterior corners. Nothing appears from the record to support the contention of appellant that Mr. Hall, one of the members of the commission, was not a disinterested party. On the contrary, it does appear that he at one time assisted in making a survey to locate the corner in dispute for appellant, and knowing what was done by him at that time, appellant made no objection to his appointment upon this commission.

It was not error for Judge Kern, the presiding judge, to enter the judgment according to the directions of Judge Miller, before whom the case was tried. This was not the entering of a judgment rendered at a previous term, but was the rendering and entering of the judgment in the case, which had been taken under advisement by Judge Miller. It is provided by our Revised Statutes (chapter 7, sec. 6, subsec. 13, Hurd's 1916, J. & A. ¶ 305) that judgment shall not be arrested, stayed, reversed, impaired or in any way affected for any informality in entering the same or making up the record thereof. While the entry as made was somewhat informal, it appears to us that it is just such informalities as this that the statute is designed to meet. The commission appearing to have proceeded in accordance with the statute, and no material error appearing on the record, the judgment should and will be affirmed.

*Affirmed.*